**In the Matter of Ray VELASQUEZ, Respondent.**

**No. 85-104.**

District of Columbia Court of Appeals.

Argued Dec. 10, 1985.

Decided April 2, 1986.

Fern Flanagan, Asst. Bar Counsel, with whom Thomas H. Henderson, Jr., Bar Counsel, Washington, D.C., was on brief, for petitioner.

Albert H. Turkus, Washington, D.C., with whom Carrie A. Simon and Alan J. Goldstein, Greenbelt, Md., were on the response, for respondent.

Before TERRY and STEADMAN, Associate Judges, and REILLY, Senior Associate Judge.

PER CURIAM:

On November 24, 1984, respondent Velasquez was disbarred by the Maryland Court of Appeals for actions involving the deposit of personal and business funds into his client's escrow account and the use of that account to carry on the firm's business for a period of five years in order to conceal the firm's funds from creditors. The facts are fully set forth in *Attorney Grievance Commission of Maryland v. Velasquez*, 301 Md. 450, 483 A.2d 354 (1984), and in the attached Report and Recommendation of the Board on Professional Responsibility (Board) dated April 15, 1985.

Proceedings were begun in this jurisdiction on January 11, 1985, when Bar Counsel—as required by D.C.Bar R. XI, § 18(1)—filed a copy of the Maryland Court of Appeals decision with the clerk of this court and with the Board. On February 1, 1985, we requested that the Board determine whether reciprocal discipline should be imposed, or whether the Board would elect to proceed de novo pursuant to D.C.Bar R. XI, § 7. On February 12, 1985, Bar Counsel notified the Board that he did not oppose the imposition of reciprocal discipline in respondent's case; respondent's objections were filed by his counsel on February 19, 1985. On April 15, 1985, the

Board issued its attached Report and Recommendation that reciprocal discipline be imposed and that respondent be disbarred in the District of Columbia.[1]

**I.**

In deciding this reciprocal discipline proceeding, we are governed by D.C.Bar R. XI, § 18, which reads in pertinent part as follows:

(5) Discipline to be imposed.... [T]his Court shall impose the identical discipline [as in the other jurisdiction] unless Bar Counsel or the attorney demonstrates, or the Court finds upon the face of the record upon which the discipline is predicted, that clearly ...

(c) The imposition of the same discipline by the Court would result in grave injustice; or

(d) The misconduct established warrants substantially different discipline in this jurisdiction....

Respondent invokes subsections (c) and (d) in seeking a lesser discipline than disbarment.

Our role in reciprocal discipline cases differs from that in disciplinary matters originating in our own jurisdiction. The above-quoted rule provides that we "shall impose the identical discipline" unless it is "clearly" shown that an exception applies. We highlight this language in order to contrast it with our usual standard of review in disciplinary matters, as set forth in D.C.Bar R. XI, § 7(3):

[The Court] shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted.

A showing that action would "foster a tendency toward inconsistent dispositions" or otherwise be "unwarranted" contemplates a greater degree of latitude in application than a showing that "clearly" the misconduct warrants "substantially differ-

---

**1.** Two members of the Board dissented from that recommendation on the ground that the exceptions in D.C.Bar R. XI, § 18(5)(c) and (d) were applicable to this case.

ent discipline," or that identical discipline would result in "grave injustice." [2]

The rationale behind the use of a more rigid standard in reciprocal discipline cases is plain. First, another jurisdiction has already afforded the attorney a disciplinary procedure that includes notice, an opportunity to be heard, sufficient proof of misconduct, and a determined sanction. There is no need for a de novo repetition of the entire process, and the burden of persuasion is reversed. Second, there is merit in the idea of granting due deference—for its sake alone—to the opinions and actions of a sister jurisdiction with respect to attorneys over whom we share supervisory authority.

Put another way, in dealing with proceedings involving our jurisdiction alone, we concern ourselves with inconsistent dispositions of cases involving comparable conduct by different attorneys. In a reciprocal discipline proceeding, we also must factor in the effect of an inconsistent disposition involving identical conduct by the same attorney.

Applying the foregoing considerations in the review of this case, we are unable to conclude that either exception invoked by respondent is clearly met. As is pointed out in the Board report, disbarment is a usual sanction in cases of this type. *In re Hines*, 482 A.2d 378, 384–85 (D.C.1984). Respondent invites us to compare several decisions imposing a lesser sanction than disbarment. Besides the two which the Board found to be distinguishable, as do we, he invokes *In re Gilchrist*, 488 A.2d 1354 (D.C.1985). That case involved a single instance of commingling spanning a short period; it does not approach the seriousness of respondent's misconduct in this case.

We accept the Board's recommendation of reciprocal disbarment. Accordingly, it is

ORDERED that respondent, Ray Velasquez, is disbarred from the practice of law in the District of Columbia. This order shall take effect 30 days from the date of this opinion.

*So ordered.*

## APPENDIX

### BOARD ON PROFESSIONAL RESPONSIBILITY

### DISTRICT OF COLUMBIA COURT OF APPEALS

Bar Docket No. 476–84

IN THE MATTER OF: RAY VELASQUEZ, RESPONDENT.

### REPORT AND RECOMMENDATION

Respondent is a member of the bar both in the State of Maryland and the District of Columbia. The Court of Appeals of Maryland has recently disbarred Respondent for conduct in violation of Disciplinary Rule 1–102 (A)(1), (3), (4), (5), (6); Disciplinary Rule 9–102 (A)(1), and Disciplinary Rule 9–102(B)(3) and (4). The District of Columbia Court of Appeals has now ordered the Board of Professional Responsibility to recommend either reciprocal discipline in this jurisdiction or a *de novo* proceeding pursuant to Rule XI, Section 7. The Board recommends that reciprocal discipline be imposed and that Respondent be disbarred from practice in the District of Columbia.

*Summary of Charges*

The charges in this matter arise from proceedings of the Attorney Grievance Commission of the State of Maryland. Acting pursuant to the provisions of Maryland Rule BV IX on behalf of the Commission, Bar Counsel filed a petition with the Court of Appeals of Maryland seeking disciplinary action against Ray Velasquez, a member of the Maryland Bar. The petition alleged that Velasquez violated DR 1–102(A)(1), (3), (4), (5), (6), which states that a lawyer shall not engage in illegal conduct

---

**2.** Similarly, § 18(5)(a) and (b) contains strong language giving rise to a more stringent requirement for accepting the Board's recommendation than does § 7(3). Though the language of § 18(5)(e) is not as forceful, it envisions a more straightforward test and still must be "clearly" demonstrated.

involving moral turpitude, dishonesty, fraud, or misrepresentation, or conduct that is prejudicial to the administration of justice, or any other conduct that adversely reflects on his fitness to practice law, DR 9–102(A), which prohibits a lawyer from commingling funds of his separate clients, and DR 9–102(B)(3), (4), which requires that a lawyer maintain complete records with respect to the receipt and disbursement of clients' funds coming into his possession.

The matter was referred for hearing to a trial judge of the Seventh Judicial Circuit of Maryland. The facts pertaining to Velasquez's activities are not in dispute. Respondent was admitted to the Maryland Bar in 1963 and the Bar of the District of Columbia in 1972. In 1974, Mr. Velasquez formed a partnership with Joseph A. Finlayson, Jr. Five years later, Mr. Finlayson developed a severe alcoholism problem. As Mr. Finlayson's drinking problem worsened, his absences from the firm became more frequent. His ability to contribute to the financial support of the law practice also declined. In 1982, Mr. Finlayson was brought before the Maryland Court of Appeals on charges of misconduct, including neglect of his clients' interests and was suspended indefinitely, with the Court taking note of the special circumstances of his alcoholism. *See* 293 Md. 156, 442 A.2d 565 (1982).

During this period, Mr. Velasquez faced the difficult tasks of holding the partnership together, serving the firm's clients, and meeting financial responsibilities to the firm's creditors. The income of the partnership steadily decreased until regular payments to the firm's creditors became impossible. Respondent made attempts to negotiate payment plans with the firm's creditors to satisfy the indebtedness owed to them by Messrs. Finlayson and Velasquez. Some accepted his offer; others rejected it. In 1979 certain creditors placed a lien on the partnership's bank account as well as Mr. Velasquez's administrative account.

In an effort to save the law firm and to continue his representation of existing clients, Mr. Velasquez deposited personal and business funds into his client's escrow account and used that account to carry on the firm's business. By 1984, Mr. Velasquez had succeeded in making full payment to virtually all of the firm's former creditors. The remaining creditors agreed to payment schedules.

In November, 1982, Mr. Velasquez received a check from an insurance company in settlement of a client's claim. Mr. Velasquez deposited the proceeds of the check in the escrow account and wrote a check to the client for her share of the amount. He agreed with the client to pay her physician's bill out of the remaining amount. In December, 1982, Velasquez provided the doctor with a check drawn on the escrow account. At the time the check was presented to the bank for payment, however, the balance of the escrow account was insufficient to cover the check. Three months later Mr. Velasquez made full payment to the client's physician in the form of a treasurer's check. At no time did Respondent's client ask for the funds owed to the doctor nor did she request that Respondent pay the doctor prior to March, 1983.

The record demonstrates that Respondent knowingly, albeit misguidedly, utilized the escrow account to carry out the firm's business. Although Respondent was successful in utilizing this scheme to satisfy outstanding debts with creditors and to keep the firm afloat, he admits, and the Court of Appeals found, that his actions clearly violated the disciplinary rules of Maryland.

At the evidentiary hearing, the judge filed his findings of fact and conclusions of law based upon stipulations of facts and evidence presented at the hearing. Mr. Velasquez represented himself throughout the disciplinary proceedings. The trial judge found that, although Respondent had violated DR 9–102(A) by commingling his clients' funds and DR 1–102(A)(4) by concealing his firm's assets from its creditors,

Respondent had not engaged in any act of fraud or moral turpitude. In addition, the trial judge concluded that Respondent had not violated DR 9–102(B)(3) or (4) since there was no evidence that payment had ever been demanded of Respondent by his client at any time.

*Discussion*

The Court of Appeals of Maryland made an independent review of this matter based on the final report of the trial judge and rendered its opinion on November 8, 1984. The Court concluded, and we agree, that the hearing judge's findings of fact relating to commingling and failure to keep accurate and safe records of clients' property are supported by clear and convincing evidence on the record. We further agree with the Maryland Court of Appeals that, notwithstanding the findings of the trial judge, the activities of the Respondent constituted illegal, dishonest conduct and misrepresentation.

Under these circumstances, the Maryland authorities rationally concluded that Respondent committed those acts with which he was charged. The record does not support Respondent's claim that his unfamiliarity with the disciplinary proceedings of Maryland, the absence of self-interest as his motivation and the absence of any evidence that the client demanded funds or was in any way harmed by his conduct should result in a lesser sanction in this case.

All the violations found in the Maryland proceeding would be violations of the Code of Professional Responsibility as it applies in the District of Columbia. Ironically, the motivation for Respondent to commit these violations was the effort to pay off the debts of the partnership owed by him and his disabled partner to various creditors.

We are not unsympathetic to the commendable efforts of Respondent to maintain the viability of the law practice. We cannot, however, permit these sympathies to obscure the fact that the conduct of Respondent was intentional, and not inadvertent. The use of clients' funds, deposited in the escrow account, for general firm administration purposes is an unequivocal violation of the disciplinary rules. In addition, Respondent's conduct amounted to a fraud on creditors and is unworthy of any member of the bar under the standards established by the Court of Appeals in this jurisdiction.

Pursuant to Rule XI, Section 18, we are directed to recommend reciprocity to the Court of Appeals when, *inter alia,* the imposition of reciprocal discipline would not result in a grave injustice or where there is not a gross disparity between the sanctions that would be imposed in the District of Columbia with the sanction imposed by the other jurisdiction. We are bound to analyze the actions of the Maryland authorities in view of the standards set out in the Rules of our Court.

In this jurisdiction, disbarment is the usual sanction for misappropriation. *See, e.g., In re Burton,* 472 A.2d 831, 848 (D.C. 1984) (per curiam); *In re Quimby,* 359 F.2d 252 [257], 258 (D.C. Cir.1966) (per curiam). Respondent not only misappropriated client funds, he did so over a five-year period and as part of a scheme to conceal funds from creditors. The Maryland Court of Appeals found that Respondent not only commingled and misappropriated client funds, but also, *inter alia,* that his activities were illegal conduct involving moral turpitude.

Respondent's reliance on *In re Harrison,* 461 A.2d 1034 (D.C.1983), and *In re Hines,* 482 A.2d 378 (D.C.1984), is misplaced. Respondent's conduct is clearly beyond the scope of *Harrison* and *Hines.* Therefore, it appears to the Board that the reciprocal discipline of disbarment is well within the range of appropriate sanctions in the District of Columbia and is warranted in this matter. *See In re Kyle,* 446 A.2d 837 (D.C.1982); *In re Leach,* D–12–76 (D.C. February 18, 1976).

Pursuant to District of Columbia Court of Appeals Rule XI, Section 18(2), the Board hereby recommends that the District of Columbia Court of Appeals order that

Respondent, Ray Velasquez, be reciprocally disbarred in the District of Columbia.

Board on Professional Responsibility

By: /s/ Karen Hastie Williams
KAREN HASTIE WILLIAMS

DATE: April 15, 1985

All members of the Board concur in this recommendation except Messrs. Webb and Alexander who dissent in a separate opinion.

DISSENTING OPINION OF EDWARD B. WEBB, JR.

I dissent from the Board's opinion because I believe that the imposition of reciprocal discipline in this case is not required pursuant to Rule XI § 18. In my view, the sanction of disbarment would result in a grave injustice; Thus, the recommendation should be against reciprocal discipline.

Neither the Court of Appeals nor this Board has announced a *per se* rule with respect to the sanction in cases involving misappropriation. Rather, the Board is required to consider each case (of misappropriation) on "its own particular facts." *In re Hines*, 482 A.2d 378, 386 (D.C.1984). In so doing, I believe that disbarment is too harsh a sanction in the circumstances of this case. The actions of the Respondent do not parallel those found in *In re Burka*, 423 A.2d 181 (D.C.1980) (*en banc*) nor *In re Burton*, 472 A.2d 831 (D.C.1984). I find that *In re Hines, supra,* is a comparable case on the facts and that a suspension of not more than two years would be warranted. Similarly, I believe that the imposition of reciprocal discipline would result in a gross disparity between the sanction that would be imposed in the District of Columbia with the sanction imposed by Maryland. Consequently, I respectfully dissent.

/s/ Edward B. Webb, Jr. by JLM
EDWARD B. WEBB, JR.

Date: April 15, 1985

Dr. Alexander joins in this dissent.