717 A.2d 342 (1998)
In re N. Jerome WILLINGHAM, Respondent.
No. 96-BG-1504.
District of Columbia Court of Appeals.
Argued May 21, 1998.
Decided September 3, 1998.
N. Jerome Willingham, respondent, pro se.
Donna M. DeSilva, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for the Office of Bar Counsel.
Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.
*343 Before WAGNER, Chief Judge, and FARRELL and KING,[*] Associate Judges.
PER CURIAM:
Respondent, N. Jerome Willingham, a member of the bars of the State of North Carolina and the District of Columbia, was suspended from the bar of North Carolina for three years for commingling personal funds with entrusted funds in his escrow account, failing to maintain proper trust account records, and neglecting a criminal appeal. On December 13, 1996, upon notification by Bar Counsel of the proceedings in North Carolina, this Court suspended respondent on an interim basis pursuant to District of Columbia Bar R. XI, § 11(d) (1998) and requested the Board on Professional Responsibility (Board) to recommend whether identical, greater or lesser discipline should be imposed as reciprocal discipline or whether the Board, instead, elects to proceed de novo. Concluding that discipline imposed in North Carolina was outside the range of sanctions that would be imposed for the violations in the District, in its Report and Recommendation to the Court on July 30, 1997, the Board recommended a sixty-day suspension. See D.C. Bar R. XI, § 11(c)(4).[1] Before the Board, Bar Counsel recommended a sixty-day suspension, but also recommended a fitness requirement for reinstatement. Bar Counsel filed an exception to the Board's report and recommendation, challenging only the Board's failure to include a fitness requirement.[2] For the reasons hereinafter stated, we adopt the recommendation of the Board.

I.
Respondent was suspended from the practice of law in North Carolina for violating the following disciplinary rules: Rules 10.1(a) of the North Carolina Rules of Professional Conduct (commingling); 10.1(c)(2) (depositing legal fees into, and failing to withdraw undisputed legal fees from trust account); 10.2(c)(1) (failure to identify deposits to trust account); 10.2(c)(2) (drawing instruments on trust account payable to cash); 10.2(c)(3) (failure to keep ledgers of entrusted funds); 10.2(d) (failure to reconcile trust account on quarterly basis), and Rule 6(b)(3) (failure to act with reasonable diligence and promptness). The factual basis for the commingling violations was that respondent had deposited personal funds into his trust account, wrote checks from the account to cash and for personal and business expenses, failed to withdraw promptly his attorney's fees from the account, and made several deposits without indicating the source of the funds. Respondent did not keep ledgers for individual clients to track funds in the account. The Disciplinary Hearing Commission of North Carolina (North Carolina Commission) determined that the evidence was insufficient to sustain a charge of misappropriation because the record failed to show that at the time of shortfalls in the account, respondent was holding entrusted funds as opposed to legal fees or unreimbursed expenses that had not been withdrawn timely. The Commission also found that respondent did not exhibit the criminal intent or dishonesty necessary to show misappropriation.
Respondent's violation of Rule 6(b)(3) (failure to act with reasonable diligence) arose out of his representation of a defendant in a criminal case. The North Carolina Commission determined that respondent had failed to perfect his client's appeal timely, and the government filed a motion to dismiss. Respondent moved to withdraw as counsel, another attorney was appointed, and the appeal was reinstated.
*344 Respondent was suspended for three years in North Carolina, two of which were stayed conditioned upon his compliance with Article IX, § 25(B)(3) of the Rules and Regulations of the North Carolina State Bar (now Rule.0125(b)(3)). This rule requires every suspended attorney to file a verified petition for reinstatement and demonstrate compliance with notice requirements similar to our Rule XI, § 14,[3] refrain from ethical violations, and refrain from the practice of law. The order further provided that respondent verify his attendance at a practical skills course and that he prove satisfaction of continuing legal education requirements and that his bookkeeping system complied with ethical rules.
Respondent's initial request for reinstatement in North Carolina, filed after one year of the suspension, was denied. The North Carolina Commission determined that respondent: (1) had failed to send notice of suspension to the District of Columbia and to the U.S. District Court for the Eastern District of North Carolina; (2) had continued to represent clients after the effective date of his suspension of May 6, 1995; and (3) had misrepresented himself as a licensed attorney during a visit to a Federal prison. Respondent was reinstated in North Carolina on May 13, 1998, upon a finding by the Commission that respondent had satisfied the conditions for reinstatement.

II.
D.C. Bar R. XI, § 11(c) provides that reciprocal discipline shall be imposed unless one of five specified exceptions apply, which the attorney must establish by clear and convincing evidence. See In re Gardner, 650 A.2d 693, 695 (D.C.1994). Among the exceptions is that "[t]he misconduct established warrants substantially different discipline in the District of Columbia. . . ." Rule XI, § 11(c)(4). Both the Board and Bar Counsel agree that this exception is applicable to respondent's case in that the three-year suspension imposed in North Carolina is substantially different from the sanction which would be imposed in the District for the same misconduct. See In re Garner, 576 A.2d 1356, 1357 (D.C.1990) (For application of the "substantially different discipline" exception of D.C. Bar R. XI, § 11(f), there must be a substantial difference between the discipline imposed in the original jurisdiction than that imposed in the District).
A survey of our cases reveals that the discipline imposed by North Carolina in this case is, indeed, substantially outside of the range of sanctions which would be imposed in this jurisdiction. Commingling and trust violations, not amounting to misappropriation, have resulted in thirty-day suspensions under circumstances similar to those in this case. See, e.g., In re McGann, 666 A.2d 489, 491-92 (D.C.1995) (thirty-day suspension imposed as reciprocal discipline for commingling, use of trust account funds for personal and business expenses, failure to maintain trust account records); In re Ross, 658 A.2d 209, 210 (D.C.1995) (thirty-day suspension for commingling and failure to deliver funds promptly). Single instances of neglect in which there were other violations or aggravating circumstances have also resulted in a thirty-day suspension. See, e.g., In re Joyner, 670 A.2d 1367, 1368, 1370 (D.C.1996) (failure to file client's claim within statute of limitations); In re Sumner, 665 A.2d 986, 987 (D.C.1995) (failure to provide competent representation, to keep client reasonably informed, to return client's papers and refund fee); In re Dietz, 633 A.2d 850, 850 (D.C. 1993) (neglect of divorce case, failure to complete work on case and to return fee); In re Foster, 581 A.2d 389, 389 (D.C.1990) (neglect, intentional failure to seek client's lawful objectives and to carry out employment contract).
*345 Bar Counsel argues that a fitness requirement should be imposed in this case based on the principles of reciprocal discipline and because of the "gravity and pervasiveness" of respondent's misconduct and his failure to appreciate his ethical responsibilities. The Board found that respondent had an otherwise unblemished career as a lawyer and a record of public service; that the North Carolina Commission found that his misconduct resulted from careless record keeping and poor office management, rather than dishonest motives; that there was no evidence of problems with his present character as to require a hearing to evaluate them; and that a showing of fitness was not a part of the original North Carolina sanction. The Board also considered that respondent has taken steps to remedy past wrongs by participating in the North Carolina management course and gaining approval of his current system of bookkeeping, as required by the North Carolina Commission.
District of Columbia Bar R. XI, § 9(g)(1) provides that "the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence or record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." See also In re Chisholm, 679 A.2d 495, 502 (D.C.1996). The Board's findings are supported by substantial evidence, and its recommended sanction is within the range of sanctions imposed in this jurisdiction in comparable cases. Similar cases in this jurisdiction where a thirty-day suspension has been imposed for neglect or commingling and failure to keep complete records have not required a showing of fitness for the lawyer's reinstatement. See, e.g., Sumner, supra, 665 A.2d at 986; Ross, supra, 658 A.2d at 209; McGann, supra, 666 A.2d at 489; Dietz, supra, 633 A.2d at 851; Foster, supra, 581 A.2d at 389; see also Joyner, supra, 670 A.2d at 1370.[4]
Bar Counsel contends that the guidelines outlined in In re Chisholm, supra, 679 A.2d 495 support the imposition of a fitness requirement in this case. Chisholm is factually distinguishable from this case in that the Board found in Chisholm a protracted neglect of a client's appeal for some five years by the attorney which resulted in dismissal of the client's appeal and the client's subsequent arrest and detention for almost one month by the Immigration and Naturalization Service. The Board also found that the attorney had engaged in "persistent, intentional dishonesty, resulting in the needless incarceration of the client." Id. at 503. This court required that Chisholm show fitness as a precondition to reinstatement because of "the number of disciplinary rules that Chisholm violated, the severity of his misconduct, the fact that it was intentional, his protracted and continuing dishonesty, his refusal to accept responsibility for his actions, his lack of contrition, and the Hearing Committee's assessment of Chisholm's condition and character. . . ." Id. at 505. In contrast, as the Board found, Willingham's conduct was not protracted, and the North Carolina Commission found that the misconduct giving rise to his suspension resulted from carelessness and poor office management rather than dishonesty.
In Chisholm, supra, we determined that our guidelines used to evaluate petitions for reinstatement are instructive in determining when to impose a fitness requirement. Id. at 503. Those factors include:
(1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future *346 ones; (4) the attorney's present character; and (5) the attorney's present qualification and competence to practice law.
Id. (citing In re Steele, 630 A.2d 196, 201 (D.C.1993) (quoting In re Roundtree, 503 A.2d 1215, 1217 (D.C.1985))). The Board adequately considered the Roundtree factors before recommending against a fitness requirement in this case.
We do not minimize the seriousness of the misconduct in which Willingham engaged during the period of his suspension. In particular, the North Carolina Commission, in refusing to reinstate him after one year of the suspension, found that "he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation"[5] during that time by misrepresenting himself as an attorney during a visit to a Federal prison in August 1995. Nevertheless, Willingham, has since met the requirements for reinstatement in North Carolina.[6] On May 1, 1998, the North Carolina Bar determined that he had satisfied all of the requirements of the applicable Code and reinstated him. Given Willingham's satisfaction of the North Carolina fitness standard, it would be an unnecessary use of our resources, under the facts of this case, to require a further fitness showing.
For the foregoing reasons, it is
ORDERED, that respondent, N. Jerome Willingham, be and he hereby is suspended from the practice of law for sixty days, effective from the date he files an affidavit in compliance with D.C. Bar R. XI, § 14(g).[7]
So ordered.
NOTES
[*] Judge King was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired on September 1, 1998.
[1] D.C. Bar R. XI, § 11(c)(4) provides for the imposition of reciprocal discipline unless the attorney can show by clear and convincing evidence that "[t]he misconduct established warrants substantially different discipline in the District of Columbia."
[2] Respondent did not file an exception to the Board's report and recommendation. He filed a brief challenging Bar Counsel's request for the imposition of a fitness requirement and the contention that he has not filed the requisite affidavit under Rule 14.
[3] D.C. Bar R. XI, 14(g) provides for a disbarred or suspended attorney to file with the Court and the Board an affidavit:

(1) Demonstrating with particularity, and with supporting proof, that the attorney has fully complied with the provisions of the order and with this rule;
(2) Listing all other state and federal jurisdictions and administrative agencies to which the attorney is admitted to practice; and
(3) Certifying that a copy of the affidavit has been served on Bar Counsel. The affidavit shall also state the residence or other address of the attorney to which communications may thereafter be directed. . . .
[4] In Joyner, supra, we imposed the requirement that the attorney certify to the court that he had completed a course in legal ethics. 670 A.2d at 1370. The attorney had missed the statute of limitations for filing his client's claim, and he had failed to show that he had taken the simplest steps to remedy the deficiencies in his practice. He also failed to pay anything on the $25,000 judgment which the client obtained against him. Id. at 1369 & n. 2. Nevertheless, the only condition imposed was the ethics course. This court chose to leave the former client to her civil remedies for collecting the judgment, rather than imposing further conditions through the disciplinary system. Id.
[5] Rule 1.2(c) of the North Carolina Rules of Professional Responsibility.
[6] The North Carolina rule states, in pertinent part:

(3) Any suspended attorney seeking reinstatement must file a verified petition with the secretary, a copy of which the secretary will transmit to the counsel. The petitioner must have satisfied the following requirements to be eligible for reinstatement, and will set forth facts demonstrating the following in the petition:
(A) compliance with Rule .0124 of this subchapter;
(B) compliance with all applicable orders of the commission and the council;
(C) abstention from the unauthorized practice of law during the period of suspension;
(D) attainment of a passing grade on a regularly scheduled North Carolina bar examination. . .
(E) abstention from conduct during the period of suspension constituting grounds for discipline. . .
(F) reimbursement of the Client Security Fund of the North Carolina State Bar for all sums. . .
(G) reimbursement of all sums which the Disciplinary Hearing Commission found in the order of suspension were misappropriated by the petitioner and which have not been reimbursed by the Client Security Fund.
(H) satisfaction of the minimum continuing legal education requirement. . . .
27 NC Admin. Code, Chapter 1, Subchapter B § .0125 (1997).
[7] If respondent has previously filed the required affidavit, the suspension shall commence from that date.