**In re Sheldon I. MATZKIN, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 03–BG–1258.**

District of Columbia Court of Appeals.

Submitted May 11, 2004.

Decided May 27, 2004.

Before STEADMAN and SCHWELB, Associate Judges, and NEBEKER, Senior Judge.

SCHWELB, Associate Judge:

Sheldon I. Matzkin, now 77 years of age, was admitted to the District of Columbia Bar in 1962. On March 12, 1993, Matzkin was convicted in the United States District Court for the Eastern District of Virginia of conspiracy to defraud the United States in connection with a bribery scheme relating to his work as an attorney and consul-

---

tant for defense contractors. He was sentenced to incarceration for 33 months. The trial judge imposed an enhanced sentence "because of there being more than one bribe" and because "the bribed official held a high-level sensitive position."

On February 1, 1994, the United States Court of Appeals for the Fourth Circuit affirmed Matzkin's conviction, as well as the sentencing enhancement. *United States v. Matzkin,* 14 F.3d 1014 (4th Cir. 1994). On October 26, 1995, this court concluded, as had the Board on Professional Responsibility, that Matzkin's conviction involved moral turpitude *per se,* and ordered that Matzkin be disbarred. *In re Matzkin,* 665 A.2d 1388, 1389–90 (D.C. 1995) (per curiam).

On June 15, 2001, Matzkin filed a petition for reinstatement. On September 21, 2001, an evidentiary hearing was held before an Ad Hoc Hearing Committee. On March 22, 2002, the Committee issued a comprehensive and thoughtful Report and Recommendation. The Committee recommended that the petition be denied. Upon considering and applying the five factors set forth in *In re Roundtree,* 503 A.2d 1215, 1217 (D.C.1985),[1] the Committee stated, *inter alia:*

> The Committee concludes that Petitioner has not met his burden under the *Roundtree* factors. The record contains little factual material to provide the Committee with any grounding to explain Petitioner's misconduct or to conclude that he has undergone any transformation. There is thus nothing in the record that would provide a basis for the Committee to conclude that Petitioner

has acknowledged and learned from his misconduct. The evidence is overwhelming that Petitioner engaged in a long-running corrupt course of conduct that appears to have continued for approximately ten years. He was convicted of a serious crime. The record facts show that this was not a single action undertaken in a moment of weakness but a long-running criminal enterprise. The trial court concluded that he was involved in more than one bribe.

With these record facts on one side of the scales, there must be significant evidence on the other side that Petitioner has come to terms with his misconduct and that he has undergone some modicum of acknowledgment, awareness and transformation. The record here is utterly barren on these issues.

The Committee focused especially on Matzkin's failure to recognize the seriousness of his misconduct:

> *Roundtree* and its progeny do not require a detailed confession of past wrongs. They do not require emotional testimony concerning redemption or rehabilitation. To impose such requirements would favor the Petitioner most schooled in the art of revealing emotions to persuade and manipulate. We do not believe that such requirements should be imposed on Petitioners seeking reinstatement.

> *Roundtree* does require that clear and convincing evidence be presented that Petitioner recognizes his wrongdoing; has learned from his misconduct; and is thus presently better equipped to handle the ethical rigors of practicing law.

---

1. These factors are:
 1. the nature and circumstances of the misconduct for which the attorney was disciplined;
 2. the attorney's recognition of the seriousness of the misconduct;
 3. the attorney's post-discipline conduct, including steps taken to remedy past wrongs and prevent future ones;
 4. the attorney's present character; and
 5. the attorney's present qualifications and competence to practice law.

Petitioner has presented no such evidence. He remains locked in the same mindset that he was in during his criminal trial. He professes deep regret but then minimizes the misconduct that he supposedly regrets. Far from providing clear and convincing evidence of recognition, the Committee finds that Petitioner cannot even meet a preponderance of the evidence standard. The evidence, in fact, tilts strongly against any finding that Petitioner recognizes the seriousness of his offense.

To the extent that Petitioner recited the litany of regret the Committee finds that it was not credible. All professions of regret had to be extracted from Petitioner. They were followed by caveats and denials that minimized the crime for which Petitioner was convicted.

Moreover, Petitioner's explanations were not credible. The notion that he was convicted for the passive receipt of confidential information provided to him in the give and take of procurement negotiations is completely at odds with the record. We do not credit Petitioner's explanations here.

Finally, there is no evidence on the issue of why Petitioner committed a crime; what has changed in his life; and how he would be better able to meet his ethical responsibilities if he were reinstated. In this vacuum, the Committee has no basis to make an informed decision that Petitioner has the necessary grounding to resume the practice of law.

The Committee concluded:

This is not the case of a practitioner who, in a moment of weakness, committed an aberrant act of misconduct. This is the tragic case of a highly intelligent and skilled attorney who engaged in a long-running criminal enterprise. Consequently, he must present clear and convincing evidence of recognition and

transformation. Petitioner has not done so.

The matter then came before the Board on Professional Responsibility. By letter of March 26, 2002, Bar Counsel advised the Board that she did not object to the findings or the recommendation of the Hearing Committee. By letter of April 22, 2002, Matzkin's attorney advised the Board that he likewise would not file any exceptions to the Report. On November 12, 2003, the Board issued a brief Report and Recommendation in which it adopted the Hearing Committee's Report in its entirety and recommended that the court deny Matzkin's Petition for Reinstatement.

 Neither Bar Counsel nor Matzkin has filed an exception to the Board's Report and Recommendation. The Board's recommendation is entitled to great weight, *In re Clyman*, 713 A.2d 313, 314–15 (D.C.1998), and our review is even more deferential where, as here, no party has filed an exception. *In re Shore*, 817 A.2d 834 (D.C.2003) (per curiam). Accordingly, we adopt the recommendation of the Board on Professional Responsibility, and Matzkin's petition for reinstatement is denied.

*So ordered.*

STEADMAN, Associate Judge, concurring.

I must question whether we need reach the merits of this matter before us. Neither the attorney in question nor Bar Counsel has taken any exception before us to the recommendation of the Board that the petition for reinstatement be denied. Indeed, at an earlier stage in this proceeding, the attorney through counsel advised the Board that he would not file any exceptions to the negative recommendation of the Hearing Committee to the Board. I think it would have been quite proper for

the Board at that point to have deemed the petition to have been constructively withdrawn and to have dismissed the matter on that basis.

We have at least twice taken note of the right of a petitioner to withdraw such a petition, notwithstanding the absence of any express provision therefor in D.C. Bar R. XI, § 16. *See In re Spiridon,* 816 A.2d 809, 810 n. * (D.C.2003); *In re Tinsley,* 668 A.2d 833, 838 n. 2 (D.C.1995). I see no reason why the failure of a petitioner to take exception to a Committee recommendation against reinstatement should not be treated as the functional equivalent of a withdrawal. By the same reasoning, I see no reason why, where a Board recommendation to deny reinstatement is unopposed, we should not likewise construe the failure to take exception as constituting a withdrawal of the petition. In seeking reinstatement, it is after all the petitioner who is the moving party, unlike the case in the original imposition of discipline. D.C. Bar R. XI, § 16(d).

On the merits, I join the opinion of the court.