*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-BG-611

FILED 4/14/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

IN RE IDUS J. DANIEL, JR., PETITIONER.

A Suspended Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 405077)

On Report and Recommendation of
the Board on Professional Responsibility
(BDN-400-13)

(Argued February 10, 2016                    Decided February 22, 2016)[*]

*Wendell C. Robinson* for petitioner.

*Dolores Dorsainvil Nicolas*, Assistant Disciplinary Counsel, for the Office of Disciplinary Counsel. *Wallace E. Shipp, Jr.*, Disciplinary Counsel, *Jennifer P. Lyman*, Senior Assistant Disciplinary Counsel, *Jelani Lowery*, Senior Staff Attorney, and *William R. Ross*, Assistant Disciplinary Counsel, were on the brief for the Office of Disciplinary Counsel.

Before GLICKMAN and EASTERLY, *Associate Judges*, and FARRELL, *Senior Judge*.

_____

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. The Office of Disciplinary Counsel subsequently moved to publish and the division granted that motion.

PER CURIAM: In 2011 this court determined that Petitioner, Idus Daniel, had commingled client and personal funds in violation of Disciplinary Rule 1.15 (a), made false statements to an IRS agent in violation of Disciplinary Rule 8.4 (c), and had sought to conceal taxable income from the IRS by concealing it in two IOLTA and client trust accounts, again in violation of Disciplinary Rule 8.4 (c). *See In re Daniel*, 11 A.3d 291, 293-94 (D.C. 2011). We suspended Mr. Daniel for three years, with reinstatement conditioned upon a showing of fitness. *Id.* Given the nature of the misconduct at issue, we expressed "no doubt that if and when Daniel seeks reinstatement, his status with the IRS will be a relevant consideration." *Id*. at 302.

Mr. Daniel now seeks reinstatement.[1] Evaluating that petition under the criteria set forth in D.C. Bar R. XI, § 16 (d)(1)(a)-(b)[2] as interpreted by this court in

---

[1] The petition for reinstatement currently before the court was filed on October 11, 2013, and is Mr. Daniel's second petition for reinstatement. He withdrew his first petition after the BPR held a hearing, but before it issued its recommendation, in order to send the letters of apology discussed in note 6 below.

[2] An attorney seeking reinstatement must demonstrate "(a) [t]hat the attorney has the moral qualifications, competency, and learning in law required for readmission; and (b) [t]hat the resumption of the practice of law by the attorney will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest." D.C. Bar R. XI, § 16 (d)(1)(a)-(b).

*In re Roundtree*, 503 A.2d 1215, 1217 (D.C. 1985),[3] an Ad Hoc Hearing Committee of the Board of Professional Responsibility recommended that this court deny reinstatement.  We agree that Mr. Daniel has failed to prove by clear and convincing evidence[4] that reinstatement is appropriate, and we accept the Hearing Committee's recommendation.

We agree with the Hearing Committee that Mr. Daniel failed both to fully document his tax deficiencies and to substantiate his assertion that he had satisfied his tax obligations.  His failure to submit adequate proof—in particular, his failure to demonstrate that he had come clean to the IRS[5]—is fatal to his petition for

---

[3]  Under *Roundtree*, we consider "(1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law."  503 A.2d at 1217.

[4]  *See* D.C. Bar R. XI, § 16 (d)(1).

[5]  The Hearing Committee focused on Mr. Daniel's failure to show that he had "satisfied" his tax deficiencies, presumably in response to Mr. Daniel's claims that he does not currently owe the IRS any money.  Our core concern, however, is not that Mr. Daniel has paid every dime he owes.  Rather, we seek to ensure that Mr. Daniel has given complete and accurate information to the IRS and the Bar and that he is at least working in good faith to resolve any outstanding deficiencies.  *See In re Courtois*, 931 A.2d 1015, 1016 (D.C. 2007) (granting petition for reinstatement where petitioner had negotiated an Offer in Compromise with the IRS, subject to condition that "petitioner shall submit to Bar Counsel and the

(continued…)

reinstatement. *See In re Robinson*, 705 A.2d 687, 688-89 (D.C. 1998) (recognizing that "in reinstatement cases[,] primary emphasis should be given to matters bearing most closely on the reasons why the attorney was suspended or disbarred in the first place" and declining to disregard petitioner's mismanagement of personal finances because it was "behavior reminiscent of actions that led to his disbarment").

There is simply nothing in the record before us to show that Mr. Daniel ever advised the IRS in a meaningful way[6] that he had concealed taxable income such that it could reliably make an assessment of his tax obligations and any outstanding deficiencies. Given his history of dishonesty, his conclusory assertions that he was

Board, on a semi-annual basis, notification and proof of payments in compliance with the terms of the OIC until such time as he has paid restitution in full").

[6] Although Mr. Daniel asserted in his second petition for reinstatement that letters sent in 2013 to the "IRS commissioner" and "their agent" (a "Ms. T. Stevens") were "deemed an important step on petitioner's road of redemption," these letters were not a serious effort to set things right with the IRS. The Commissioner presumably does not work on individual cases. And because Mr. Daniel had not interacted with Ms. Stevens for more than a decade, Mr. Daniel had no idea whether she still worked for the IRS. Even if Mr. Daniel's letters had made their way to someone in a position to investigate the matter, Mr. Daniel provided no useful identifying information other than his name. The IRS typically requires a Social Security Number, date of birth, and address to access a taxpayer's records. *See, e.g.*, IRS, Help and Resources, Get Transcript, https://www.irs.gov/Individuals/Get-Transcript (last visited Feb. 12, 2016).

"all square" with the IRS are inadequate. Moreover, we give little weight to the documents he submitted a month after his second reinstatement hearing.[7] Specifically, the November 5, 2010, letter from the IRS approving a payment plan to address past deficiencies nowhere detailed what the IRS understood those deficiencies to be.[8] On the contrary, the letter indicated that the plan was "[b]ased on [Mr. Daniel's] payment proposal."[9] Similarly, the March 2012 notice of refund only reflected that discrete payments were made to address deficiencies in tax years 2001, 2002, and 2008, although Mr. Daniel's tax problems spanned a longer period of time.[10] And while the notice indicated that Mr. Daniel might be due a

---

[7] It is surprising to say the least that the only tax-related documents Mr. Daniel submitted at this hearing were the two apology letters he wrote to the IRS in 2013. *See supra* note 6.

[8] At least not in the form it was submitted to the hearing committee; one or more pages of the letter were missing.

[9] The timing of this negotiated installment plan also gives us pause. Only a week earlier, this court had heard argument in Mr. Daniel's disciplinary case. In that proceeding, Mr. Daniel was still denying that he had violated any disciplinary rules and was arguing that even a one-year suspension was unduly harsh. *See In re Daniel*, 11 A.3d at 297.

[10] Mr. Daniel acknowledged at his second reinstatement hearing that his tax difficulties dated back to the late 1990s, but at his first reinstatement hearing he had admitted that he did not "have a clear recollection" and he "guess[ed]" his tax troubles began in the "mid-90s." Moreover, at his disciplinary proceeding resulting in his disbarrment, Bar Counsel had submitted evidence that Mr. Daniel's improper use of his IOLTA accounts to conceal assets from the IRS extended through November 2005, which supplied the foundation for a separate violation of Rule 8.4 (c). *See In re Daniel*, 11 A.3d at 299.

small refund after these payments, it qualified that a check would be mailed only if "you don't owe other tax or debt we're required to collect."[11]  This notice patently did not indicate, much less establish, that Mr. Daniel fully disclosed his past concealment of income to the IRS so as to allow that agency to make an informed determination that Mr. Daniel had fulfilled his tax obligations.

Should Mr. Daniel once again petition for reinstatement, he will have to provide some documentation that he has communicated with appropriate staff at the IRS to disclose his past concealment of funds and to ensure that the agency has accurate information from which it can assess his tax obligations and deficiencies from 1996 (when he opened the 329 IOLTA account[12]) through 2005.   In addition and for the same time period, Mr. Daniel will have to provide documentation from the IRS detailing his income, his tax obligations, any tax deficiencies, and any payments made to address those deficiencies.

---

[11]   Mr. Daniel provided no further documentation showing that he received such a check, and thus that he was actually "square" with the IRS.

[12]   *See In re Daniel*, 11 A.3d at 294.  Mr. Daniel opened the second account (the 626 account) in 1998. *Id.*

Accordingly, Mr. Daniel's petition for reinstatement is denied.

*So ordered.*

ENTERED BY DIRECTION OF THE COURT:

JULIO A. CASTILLO
Clerk of the Court